UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

Ted Leno,                           :
    Plaintiff,                   :
                                 :
    v.                           :        File No. 1:07-CV-163
                                 :
Mark Stupik and                     :
City of Barre, Vermont              :
    Defendants.                  :
_____:


RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
(Papers 38 and 41)

I.  <u>Introduction</u>

Plaintiff Ted Leno ("Leno") brought suit against Defendants
City of Barre police officer Mark Stupik ("Stupik") and the City
of Barre ("Barre") for alleged misconduct that occurred on August
5, 2005 when Stupik took Leno into protective custody.  Leno
seeks damages under 42 U.S.C. § 1983 for unreasonable seizure and
excessive use of force in violation of the Fourth Amendment.
Leno also seeks damages from Stupik under common law negligence
for the bodily injury Stupik caused in violation of his duty "not
to overreact and aggressively handle Plaintiff."  Leno alleges
the City of Barre is liable for Officer Stupik's actions under a
theory of respondeat superior and because Barre had notice that
Stupik was the subject of a past excessive force complaint.
Stupik and Barre have each moved for summary judgment.  For the
following reasons, Defendants' motions are granted.

1

II.  Background

     This case is before the Court on motions for summary
judgment.  Therefore, the following undisputed facts are taken in
the light most favorable to Leno, the non-moving party.  On
August 4, 2005, Leno and a friend purchased a twelve-pack of
Genesee Premium, referred to as the Green Monster by Leno for its
exceptional potency, and set off in Leno's car for an afternoon
of fishing.  Leno had four drinks over the course of the
afternoon.  The fishing trip ended as dusk approached, and Leno
drove his friend home and continued to Gusto's, a bar in the City
of Barre.  Leno had one beer at Gusto's and decided to walk home
because he had too much to drink.  Leno stopped and urinated at
the side of his car in violation of a City ordinance.

     This conduct drew the attention of Barre police officer Mark
Stupik, who was standing outside the nearby police station.
Officer Stupik approached Leno "to see what his problem was," and
Leno walked away from Stupik, "weaving back and forth."  Officer
Stupik caught up to Leno and questioned him.  Stupik repeatedly
asked Leno for his identification and where he lived.  Leno
either would not or could not answer Officer Stupik's questions.
Stupik concluded Leno was incapacitated and should be taken into
protective custody.  Stupik based this conclusion on his belief
that Leno was highly intoxicated, would not or could not answer
his questions, showed signs of resistance, and was at risk of

injuring himself or others.  Officer Stupik informed Leno he was being taken into custody and attempted to place him in handcuffs, but Leno pulled away from the officer's grasp.  Officer Stupik then used an arm bar takedown to bring Leno to the ground and place the handcuffs on him.  During the arm bar takedown, Leno sustained a one-inch cut along the upper edge of his eyebrow.

When Officer Stupik observed that Leno was bleeding, he had dispatch call an ambulance.  The EMT applied pressure to stop the bleeding while Leno was transported to the hospital.  The EMT described Leno as "extremely uncooperative, very violent, very threatening."  When Leno arrived at the hospital, Dr. Duane Natvig cleansed and closed the wound.  Dr. Natvig noted Leno's wound was consistent with the type of injury sustained by a person who struck his head on a sidewalk or curb.  Mr. Leno then was evaluated by Darlene Duff, an emergency screener for Washington County Mental Health Services who determines whether an individual meets the criteria for incapacitation.  Ms. Duff evaluates the client by conferring with the police officer, visually checking and interviewing the client, and considering his blood alcohol content.  Ms. Duff concluded, based on her assessment and Leno's 0.250 blood alcohol content, that he was incapacitated and required protective custody.  Leno was placed in the City of Barre "lockup" and released at approximately 3:00 p.m. the next day when his blood alcohol content was 0.

On July 10, 2007, Leno filed this lawsuit against Stupik and the City of Barre in Washington Superior Court in Vermont. Stupik and Barre removed the case to this Court on July 30, 2007.

III. Discussion

A.   Standard for Summary Judgment

Summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" for these purposes when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The burden of demonstrating that no genuine issue of material fact exists lies with the party seeking summary judgment. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000).  Where a motion for summary judgment is supported by affidavits and other documentary evidence, however, the opposing party must set forth specific facts showing there is a genuine, material issue for trial. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 526 (2d Cir. 1994).  Thus, not every alleged factual dispute is sufficient to defeat a motion for summary judgment.

"[T]he requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-248. "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

   B.   Stupik's Motion for Summary Judgment

Leno opposes Stupik's motion for summary judgment on two grounds. First, Leno argues Stupik's decision to take him into protective custody was unjustified because he was intoxicated, but not incapacitated. Second, Leno claims Stupik used excessive force taking him into custody. Stupik contends summary judgment in his favor is appropriate because (1) Leno has not set forth one disputed material fact, (2) the undisputed facts support the decision to place Leno in protective custody, (3) the undisputed facts indicate the force used was reasonable under the circumstances, and (4) qualified immunity applies.

       1.   Propriety of Summary Judgment

Leno's Statement of Disputed Material Facts (Paper 46) purports to contest facts 10 and 11 of Defendants' Joint Statement of Undisputed Material Facts (Paper 40). Fact 10 states "Officer Stupik approached the Plaintiff and, after interacting with him, concluded that the Plaintiff was incapacitated and needed to be detoxed." Fact 11 states "Officer Stupik reached that conclusion based upon his belief that the

5

Plaintiff appeared highly intoxicated, that the Plaintiff could not tell Officer Stupik where he lived, that the Plaintiff would not identify himself, that the Plaintiff was showing signs of resistance towards Officer Stupik and based upon a concern that the Plaintiff was at risk of being injured." Leno fails to identify which of these facts he disputes. Rather, Leno recapitulates additional testimony from Stupik's deposition in an effort to contest whether, based upon the facts, Stupik was justified in concluding Leno was incapacitated and needed to be placed in protective custody. Leno also appears to have abandoned his original testimony that he was injured when Stupik struck him fifteen times above the eye while turning him in circles. Leno now alleges his injury "must have occurred when [Stupik] threw him down to the ground without warning." Paper 46. Stupik does not dispute this fact. Id. Because Leno has not set forth specific facts showing there is a genuine, material issue for trial, the Court finds summary judgment is appropriate in this case.

2.    Involuntary Placement in Protective Custody

Leno asserts a claim under 42 U.S.C. § 1983 for wrongful placement in protective custody in violation of the Fourth Amendment's prohibition against "unreasonable . . . seizures" and his right to due process under the Fourteenth Amendment. A "seizure" occurs under the Fourth Amendment "when government

actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" Graham v. Connor, 490 U.S. 386, 395, n.10 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 19, n.16 (1968)). Officer Stupik took Leno to the hospital and Barre City lockup against his will, and he was involuntarily confined there pursuant to state law. This infringement of his liberty was tantamount to the infringement of being arrested. See Anaya v. Crossroads Managed Care Sys., Inc., 195 F.3d 584, 590 (10th Cir. 1999) ("the seizure of persons for detoxification . . . is closely analogous to a criminal arrest and requires application of the probable cause standard"). Therefore, the Fourth Amendment applies in the civil context as well. Glass v. Mayas, 984 F.2d 55, 58 (2d Cir. 1993) (citing Soldal v. Cook County, Illinois, 506 U.S. 56, 68 (1992)). Under the Fourth Amendment, an officer's decision to handcuff and detain a person will not violate the Constitution provided the officer has probable cause to believe the person presented a risk of harm to himself or others. Kerman v. City of New York, 261 F.3d 229, 237 (2d Cir. 2001) (citing Monday v. Oullette, 118 F.3d 1099, 1102 (6th Cir. 1997)); see also Powell v. Texas, 392 U.S. 514, 554 n.5 (1968) (White, J. concurring) (It is within the "power of the State to remove a helplessly intoxicated person from a public street, although against his will, and to hold him until he has regained his powers."). Vermont law reflects this

standard.  Under 33 V.S.A. § 708(b) "[w]hen a law enforcement

officer encounters a person who, in the judgment of the officer,

is incapacitated . . . , the person shall be taken into

protective custody by the officer."  Vermont law defines a person

as incapacitated when

> "a person, as a result of his or her use of alcohol or
> other drugs, is in a state of intoxication . . . such
> that the person: (A) appears to need medical care or
> supervision by approved substance abuse treatment
> personnel . . . to assure his or her safety; or
> (B) appears to present a direct active or passive
> threat to the safety of others."

33 V.S.A. 702(9).

The undisputed facts demonstrate Officer Stupik had probable

cause to place Leno in protective custody.  Leno appeared highly

intoxicated, was urinating in public near a police station, would

not identify himself or tell Stupik where he lived, and showed

resistance to Stupik during their conversation.  Leno admits he

was intoxicated, but contends he was not incapacitated.  Leno

argues he "was able to walk without assistance and he was not

bothering anyone.  After urinating, [he] was able to walk down

the sidewalk, weaving back and forth but not running into

anything and not falling down."  Paper 47.

The undisputed testimony undercuts this claim.  Most

tellingly, Leno's own conflicting testimony suggests he was so

intoxicated he cannot remember how the injury occurred.

Initially, he testified Stupik struck him fifteen times above the

eye while spinning him around in circles.  Now Leno admits he must have been injured when Stupik took him to the ground. Leno's complete disregard of his own testimony on a critical factual issue suggests that his perception of whether he was incapacitated may have been skewed by his intoxication. Moreover, the EMT who treated Leno described him as uncooperative, very violent and extremely intoxicated.  Finally, Ms. Duff, the screener who performed Leno's assessment, agreed with Officer Stupik that protective custody was necessary to insure Leno's safety as well as the safety of others.  Viewing the undisputed facts in the light most favorable to Leno, Stupik's decision to place him in protective custody was supported by probable cause.  Accordingly, Stupik's motion for summary judgment on this issue is granted.

### 3.  Excessive Force

Leno claims Stupik used excessive force in violation of the Fourth Amendment.  Stupik maintains he used reasonable force and, in any event, is entitled to qualified immunity.  In order to prevail on his excessive force claim, Leno must prove that the force used against him was objectively unreasonable under the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or

other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").

In <u>Graham</u>, the Supreme Court instructs that "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene." <u>Id.</u> at 396.  The Supreme Court also cautions that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." <u>Id.</u> at 396-97.  Thus, in evaluating the reasonableness of an officer's use of force, a court should consider the specific circumstances the officer faced, such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." <u>Id.</u> at 396; accord <u>Sullivan v. Gagnier</u>, 225 F.3d 161, 165 (2d Cir. 2000).

There is no factual dispute about the force Stupik used. Leno has abandoned his initial testimony accusing Stupik of punching him fifteen times in the face while turning him in circles.  Leno now agrees he was likely injured when Stupik used an arm bar takedown to place him in custody. The only issue in dispute is whether the force used was reasonable under the circumstances.  Under the guidance set forth in <u>Graham</u>, it is

10

clear that Stupik used reasonable force.  Stupik faced a man who was highly intoxicated, who either would not or could not identify himself or say where he lived and was urinating in public.  Moreover, when Stupik reached for Leno and instructed him to place his hands behind his back, Leno pulled away.  Given Leno's level of intoxication, lack of compliance to verbal requests and active resistance to arrest, Stupik was justified in using an arm bar takedown to secure Leno's custody.

Leno suggests the injury he sustained as a result of the takedown establishes that Stupik used excessive force.  Leno sustained a one-inch cut above his eye.  The physician cleaned and closed the wound with wound glue.  No pain medication was prescribed or provided.  There is no evidence Leno suffered any other adverse symptoms due to the cut.  Even viewing the allegations of injury in the light most favorable to Leno, the cut he suffered is not so severe as to suggest the use of excessive force.  Accordingly, Stupik's motion for summary judgment on the issue of excessive force is granted.

4.  Qualified Immunity

a.  Federal Claims

The privilege of qualified immunity protects law enforcement officers from facing suit, not merely liability.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001).  To determine whether a law enforcement officer is entitled to qualified immunity, the court

must conduct a two-part analysis.  "[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged; [and] second, assuming the violation is established, the question whether the right was clearly established must be considered."  Id. at 200.  As to the second part, "clearly established" means "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.  Thus, summary judgment will be granted when "the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances."  Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995).

The Court's threshold inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right.  Saucier, 533 U.S. at 201.  As discussed in part 3., supra, excessive force claims against law enforcement officers are evaluated under the Fourth Amendment's "objective reasonableness" standard.  Graham, 490 U.S. at 388.  In part 3., supra, the Court determined that Stupik's use of force was reasonable.

However, even if Stupik's use of force was not reasonable under the circumstances, Stupik had "substantial grounds" to conclude that he had "legitimate justification under the law for

acting as he did."  Saucier, 533 U.S. at 208.  In Saucier, the
Supreme Court reiterated that "'Fourth Amendment jurisprudence
has long recognized that the right to make an arrest or
investigatory stop necessarily carries with it the right to use
some degree of physical coercion or threat thereof to effect
it.'"  Id. (quoting Graham, 490 U.S. at 396).  A reasonable
officer in Stupik's position could have concluded the force used
was permissible.  Stupik was faced with an individual who was
extremely intoxicated and behaving in an aggressive manner.  When
Stupik tried to handcuff Leno, he refused and pulled away.  Under
these circumstances, it is not evident Stupik was on clear notice
that his response was unlawful.  Furthermore, Leno identifies no
case presenting a "clearly established rule" prohibiting Stupik's
response.  Therefore, a rational jury may conclude that
reasonable officers could disagree about the legality of the
force under the circumstances.  Because Leno has not shown Stupik
deprived him of a constitutional right or that he had a clearly
established right to be free of Stupik's use of force, the Court
must grant Stupik summary judgment on the basis of qualified
immunity.

          b.    State Law Claims

     Qualified immunity is also applicable to Leno's state law
negligence claim against Stupik.  Vermont law extends qualified
immunity to state officials "(1) acting during their employment

and acting, or reasonably believing they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial, acts." Levinsky v. Diamond, 151 Vt. 178, 185, 559 A.2d 1073, 1078 (1989). Stupik approached Leno because Leno was urinating in public in violation of a City ordinance. Based upon their interaction, Stupik concluded he was authorized to place Leno in protective custody under 33 V.S.A. § 708(b). Accordingly, Stupik acted, or at least reasonably believed he was acting, within the scope of his authority as a police officer.

The Court must next determine whether Stupik acted in good faith. "[I]n applying qualified official immunity to state tort law claims, [Vermont law uses] the federal objective good faith standard 'to prevent exposing state employees to the distraction and expense of defending themselves in the courtroom.'" Cook v. Nelson, 167 Vt. 505, 509, 712 A.2d 382, 384 (1998) (quoting Sabia v. Neville, 165 Vt. 515, 521, 687 A.2d 469, 473 (1996)). Thus, "if the official's conduct does not violate clearly-established rights of which a reasonable person would have known, the official is protected by qualified immunity from tort liability." Id. The Court determined above that Stupik did not violate a clearly established right under the circumstances by using an arm bar takedown to place Leno in protective custody. Therefore, Stupik acted in good faith under Vermont law.

Under the final prong of the test, qualified immunity is appropriate if Stupik's acts were discretionary, rather than ministerial. Vermont law defines "a discretionary duty as one requiring the exercise of judgment in its performance, and a ministerial duty as one where 'nothing is left to discretion – a simple and definite duty, imposed by law, and arising under conditions admitted or proved to exist.'" Libercent v. Aldrich, 149 Vt. 76, 81, 539 A.2d 981, 984 (1987) (quoting State v. Howard, 83 Vt. 6, 14, 74 A. 392, 395 (1909)). Stupik's decision to place Leno in protective custody required the exercise of judgment as to whether or not Leno was incapacitated. Because Stupik performed a discretionary act in good faith during the course of and within the scope of his authority as a police officer, qualified immunity applies. Therefore, Stupik's motion for summary judgment as to Leno's state tort claim is also granted.

C.  City of Barre's Motion for Summary Judgment

The City of Barre argues it is not liable to Leno for the excessive force claim because a municipality may not be held liable under 42 U.S.C. § 1983 on a theory of respondeat superior, and because Leno cannot demonstrate that the City had a policy or custom of inadequate supervision or hiring. The Court agrees.

Plaintiffs may not rely on respondeat superior to impose liability under 42 U.S.C. § 1983. Monell v. Dep't Soc. Servs.,

436 U.S. 658, 691 (1978).  Rather, Leno must show the City of Barre had an official municipal policy or custom that directly resulted in deprivation of a constitutional right.  Id. at 694; Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995).  The Court determined above that Stupik did not violate Leno's constitutional rights under the Fourth Amendment.  Thus, the City of Barre cannot be liable under 42 U.S.C. § 1983.  Even if the Court found Stupik deprived Leno of a constitutional right, however, Leno has not presented evidence from which a reasonable jury could conclude Barre had an official policy or custom of permitting its police officers to use excessive force.

An official policy is one in which "a deliberate choice to follow a course of action is made . . . by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986).  However, the policy need not be part of an "explicitly adopted rule or regulation." Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992).  The inclusion of "custom" along with "policy" recognizes that the practices of government officials can, "[a]lthough not authorized by written law[,] . . . be so permanent and well settled as to constitute a 'custom or usage' with the force of law."  Monell, 436 U.S. at 691 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)).

Accordingly, § 1983 liability can attach to a municipality if a policymaker authorizes a practice, if not an official policy, that violates constitutional protections. Pangburn v. Culbertson, 200 F.3d 65, 71-72 (2d Cir. 1999) (discussing evidence plaintiff might present to show such an unwritten policy exists). Failure to adequately screen a police officer before hiring and failure to properly train or supervise a police officer can also create a custom or policy for purposes of § 1983 liability if the failure is tantamount to deliberate indifference to the rights of persons with whom the police come into contact. Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 411 (1997); City of Canton v. Harris, 489 U.S. 378, 388 (1989); accord Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992).

Leno claims the City of Barre is liable "because they had notice of Officer Stupik's propensity for using excessive force and failed to address this issue." Paper 47. This allegation could be read either as a claim that the City improperly hired Officer Stupik or as a claim the City failed to adequately supervise and train Officer Stupik. At the summary judgment stage, Leno must set forth specific facts supporting his allegations. See Dwares v. City of New York, 985 F.2d 94, 100-101 (2d Cir. 1993). Leno supports his claim by pointing to the fact that Officer Stupik has been the subject of two excessive

force complaints while employed by the City of Barre.  He was also the subject of an excessive force complaint while employed by the City of Winooski.  These facts alone do not establish, however, that the City of Barre had a policy or custom of inadequate hiring or supervision.

In order for liability to attach to a municipality's hiring decision, a plaintiff must show the decision "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Bryan County, 520 U.S. at 411.  An official's failure to adequately scrutinize an applicant's background constitutes deliberate indifference "[o]nly where . . . the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right."  Id. The Court in Bryan County emphasized that "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury.  Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff."  Id. at 412.  Moreover, "[t]he connection between the background of the particular applicant and the specific constitutional violation alleged must be strong."  Id.  Here, Leno has failed to present sufficient evidence that the plainly obvious consequence of hiring Stupik would be his use of

excessive force against a person whom he was taking into protective custody.  The only relevant information in Stupik's background was one prior complaint made during his six-year tenure at the City of Winooski.  There is no evidence as to the nature of the complaint or whether it was sustained, but there is evidence the Winooski Chief of Police told the Barre Chief of Police there were no concerns regarding Stupik and that Stupik would make a fine police officer.  Because the requisite link between Stupik's background and Leno's allegations is not established, summary judgment is granted to the City on the claim of deliberate indifference in hiring Officer Stupik.

Claims for failure to adequately train or supervise must also meet the "deliberate indifference" standard.  City of Canton v. Harris, 489 U.S. 378, 388 (1989).  In City of Canton, the Court held that a plaintiff suing a municipality for failure to adequately train its employees must show that the "municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants."  489 U.S. at 389.  For liability to attach, the plaintiff must show that a deficiency in the officer's training "actually caused" the injury.  Id. at 391.  Moreover, "the identified deficiency in a city's training program must be closely related to the ultimate injury."  Id.

The Second Circuit has applied the stringent causation and culpability requirements set out in City of Canton to supervisory claims as well. Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007). To prevail on a claim of inadequate supervision, the Plaintiff must "(1) establish [the City's] duty to act by proving they should have known their inadequate supervision was so likely to result in the alleged deprivations so as to constitute deliberate indifference . . . ;(2) identify obvious and severe deficiencies in the [City's] supervision that reflect a purposeful rather than negligent course of action; and (3) show a causal relationship between the failure to supervise and the alleged deprivations to plaintiffs." Id. at 193.

Leno has not met his burden under either standard. On a failure to train claim, Leno has not identified any deficiency in the City of Barre's training program that actually caused his injury. Likewise, Leno has not identified any obvious or severe deficiencies in the City's supervision. In contrast, Barre has provided evidence outlining the training and supervision officers receive. Prior to working for the City of Barre, Officer Stupik served as a police officer for seven years in the cities of Winooski and Berlin. When Barre hired Stupik, he was subject to a mandatory probationary period that included an orientation and basic instruction on the police department's policies and procedures. Probationary officers such as Stupik were assigned

to work with a fully-trained Barre police officer who guided and evaluated them. The probationary officer received his commission as a full-time officer only after demonstrating competence during the probationary period.

Barre police officers also must be certified by the Vermont Criminal Justice Training Council (VCJTC), the state agency responsible for establishing standards for all police officers in the State of Vermont. Certification requires that officers receive training and demonstrate competency in all basic areas of police work. The certification provided by the City of Barre exceeds the standards set by the VCJTC. More specifically, Stupik received training on Barre's policies and procedures on the use of force, which requires that officers use only such force as is reasonably necessary.

Rather than pointing to any failure in Barre's policies or customs, Leno simply alleges Barre must be liable because Stupik has been the subject of a prior excessive force complaint during his employment with Barre. Leno does not dispute, however, Barre's claim that the complaint was investigated and responded to appropriately. The City used an outside agency to investigate the allegations of excessive force. The agency concluded Officer Stupik had neither committed a criminal offense nor violated City policy. Where a City responds meaningfully to a complaint, the plaintiff bears "a heavy burden of proof in showing that the . .

. response was so patently inadequate to the task as to amount to deliberate indifference."  Reynolds, 506 F.3d at 192-93.  Leno has provided no evidence demonstrating a causal connection between the City's action (or inaction) and the alleged constitutional violation.  Therefore, the City's motion for summary judgment must be granted.

IV.  Conclusion

Defendants' motions for summary judgment (Papers 38 and 41) are GRANTED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 29th day of December, 2008.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge